Good morning, may it please the court. I'm Robert Reese for Glasswerks, the appellant. I think the three most important words of the district court said were, absent any excuse. In this sentence, absent any excuse, the absence of a filed suit is fatal. That recognizes that a condition like filing of a lawsuit can be excused. And the question next is, how do you plead that? Did we plead it properly? You don't need any specificity to plead it under CCP 457. All you have to do is say, oh, conditions were excused, which we did, but we gave you the specificity. And we gave you, we pleaded that, and before I get to the answer, that if the carrier denies coverage, then you don't even have to, and there's a suit filed, the carrier never has to see the lawsuit. The Clemmer case, the Drinan case, Samson v. Transamerica, Zurich v. Killer Music, all say, once the carrier denies coverage, whether the carrier sees the suit, whether they know about the lawsuit, whether they even know that there's a trial coming up, all of that's irrelevant. So this question's... And procedurally, where were those cases? So as, my recollection is that those cases dealt with situations where a suit was filed, and then... A suit was filed. A suit was filed, coverage was denied, and then the courts were addressing various situations and saying, no, it doesn't matter if they knew about the trial date, etc. That seems different from the situation here where a And if you read those cases, a lot of them say the suit never got to the carrier. Even though the carrier never saw the suit, it was irrelevant because the carrier wasn't going to defend it. They had already said, we're not going to defend the suit. Sure, so what you're suggesting that we do is, I think, change the terms of the policy. Not at all. If the policy says we don't have a duty to indemnify or defend unless a suit is filed, you're saying we do if you deny the claim before... If you say there's no coverage before a suit is filed, then that means that you now do have a duty to defend and to indemnify. No, we're saying that the condition of filing a lawsuit, just like the condition of giving notice of a lawsuit, or the condition of giving information about the lawsuit to the carrier, becomes irrelevant when the carrier has made a conclusive decision, we're not going to defend the claim. Okay, now what case says exactly that? There is no case that says exactly that as to the filing of a lawsuit. They all say it as to the existence of a lawsuit that the carrier never sees. Right, but there is no case that really relates to what happened here. Right, this is a case of first impression. Let me ask you this. There's no case that says the contrary, is my point. Well, there isn't any case you can point to that says, yeah, this is right, this is on point. Right. But, as I understand from reading your complaint, you allege two real causes of action. Failure to defend, breach of the duty to defend. Right, breach of contract. Breach of contract, but the theory of the breach of contract was the failure to defend. Correct. Right? And then the second one was breach of the duty of good faith and fair dealing, and then there was a claim for deck relief. Correct. Right? Okay, can you just, what is the predicate for your duty to defend? The predicate? Breach of duty, tell me, what's the heart of that claim? We have a claim made against us, and the first letter in the complaint, described in the complaint, is from the claimant, Swagg, saying this should be, Class Works is liable to us for the following reasons, lays out all the details of the reasons, and we give the Swagg letter. I've, it may be Swagg-y, the rights directly to Carrier. They said no. Carrier has, at that point, the option, if they say, we're not going to do anything until we get a lawsuit, that'd be a different case. They investigate. They say, we'll look at this case, we'll see if there's coverage. They investigate. They get all the information, all the information from us, all the information from the claimants. They have everything they would have after a fully litigated lawsuit, and they say there's no coverage, because we don't think this is property damage, and they're still making that argument now in their opposition brief, that this is property damage. The issue is, once they've come to that conclusion, full investigation, full conclusion, why does there have to be a lawsuit? If they did, if there had been a lawsuit, and we just left it on our desk. Your claim is that they had a duty to defend, once you, once you submitted the claim to them. No, they had a duty to defend, once they exercised their option to investigate and determine coverage. If they decide there's no coverage- So, you claim that, then you must claim that there was a potential for coverage. Correct. But- They investigated, and they said, no, we disagree. There's no possibility of coverage. That's a phrase I think they use more than once, no possibility of coverage. No lawsuit is filed. No lawsuit is filed, because at that point, what are we going to say to our best customer? Oh, you have to sue us so we can give the lawsuit, so then the carrier can then say, sorry, we just told you five times there's no possibility of coverage, now you have to hear it a sixth time. That's an idle act. That's a- But isn't that what your contract required? I mean, if Glassworks wanted a contract that provided coverage for claims, they could have an insurance contract that provided a defense to suit. But the essence of excuse of a condition, which is contract 101, is that contract terms in a set of circumstances can be no longer required. Let me ask you this- That's the nature of any excuse of a condition means that something that was a contract term is no longer an enforceable part of the contract because that condition has been excused. Now, there was a term that I did not see in your complaint or in the briefs, but one could look at this as an anticipatory breach. We discussed that in the breach, in the contract. I mean- What happened in the complaint? I don't know that we used that phrase in the complaint, but the facts establishing the anticipatory breach are definitely in the complaint. The fact that they've told us at least twice, maybe five times in writing, there's no possibility of coverage. So those facts are in the complaint, even if they're not characterized as a anticipatory breach. In the insurance context, does California law recognize an anticipatory breach of the contract? I'm not aware of any insurance cases that talk about anticipatory breach in this case In fact, they more talk about it as excuse of a condition preceding. There's the cases that talk about it's a forfeiture, it's inequitable to require a term of a contract if it works a forfeiture. Does anticipatory breach in California law require repudiation of the contract? Well, you can repudiate by conduct, but they've already repudiated by their expressed words, there is no possibility of coverage. Considering your complaint in the framework of anticipatory breach, that really wasn't fleshed out and briefed in that way before the district court, is that correct? I don't recall what my pipeline said. I didn't see it. I went back and read your opposition to the motion to dismiss. Well, certainly had there been leave to amend, and remember the level of review for leave to amend is strict scrutiny, or you have to, if we can amend it to, I'm not saying the words exactly correctly, but the point is that if we can amend it to establish or plead anticipatory repudiation, then we should be allowed leave to amend, which was denied by the lower court. There's a couple of things that come to mind from that statement. First that we're reviewing this for an abuse of discretion. We're reviewing the district court's decision not to allow leave to amend for an abuse of discretion. I think it's a higher level. It's not. It's an abuse of discretion. And you're using the term anticipatory repudiation, I don't think that exists in insurance law. I think that repudiation has to occur before the duty is triggered, before coverage is triggered. You seem to equate repudiation as the event that triggered coverage. You're saying by investigating and saying they wouldn't defend, that's the event that triggered their duty, and also the event that was repudiation. Do I understand your argument correctly? The decision to investigate and then say no possibility of coverage is... It does both in your view. It's both the repudiation. It's a repudiation and it excuses the condition of a suit, just like that suit never has to reach their desk, because that's what all of the existing cases say, yeah, you got sued, but that suit never reached their desk, but it doesn't matter because they never would have accepted coverage anyway. But then you get into a whole coverage dispute. I'm sorry? You get into a coverage dispute. Right. That's what all of the cases say, is once they say no coverage, well, okay, let's find out is that property damage or not. And they tried to even raise that issue in their opposition, which I don't think was appropriate, but even so, I'm prepared to discuss whether this is property damage or not. Yes, I think it is. So what facts would you plead? I didn't see anything in your briefing that said if you were given, if we were to reverse and remand and tell the district court to allow you leave to amend, what facts would you plead? Did you list anything to say what you would plead? I would look at the concept of anticipatory repudiation. If there are additional facts that are required to establish the elements of repudiation that I would not. Did you wish to reserve any time for rebuttal? Yes, I'd like to. Thank you. Thank you. Mr. Rousom. Thank you, Your Honor. May it please the court. Blake Rousom on behalf of Liberty Insurance Corporation as well as the Liberty Mutual Insurance Company. Um, we believe this case is a relatively straightforward application of the California Supreme Court decisions in both the Foster Gardner case and the powering case, essentially glassworks. Uh, it's papers and today has not cited to one decision that has ever held. There could be a breach of contract or a breach of the implied covenant of good faith in the absence of a suit. Here there are no facts that could be alleged on amendment that would be able to cure that deficiency. Simply put under the Foster Gardner case, because Liberty's duty to defend is expressly limited to suits and there was no suit and one cannot be alleged on amendment, Liberty's defense obligations simply could not arise as a matter of law, uh, given that it's duty to defend did not arise, uh, Liberty cannot be held and liable for breaching the policy, but client by declining a defense obligation that never arose. And because there was no suit, there simply was no duty to indemnify. Um, I think importantly what the court is and your honors have noted is that there glassworks cannot point to any policy provision or any specific terms of the policy that that glassworks alleged were breached. Uh, the, the, the first amendment complaint cannot be further amended to allege any actual terms breached and that's for a very simple reason and that's that Liberty did not breach any of the terms of the policy. Rather at its core, glasswork argument. Let me ask you this, because I understand the theory of their case and I may be wrong, you know, I'm not an insurance expert in any, by any stretch of the imagination. But, um, as I understand their argument is that early on Liberty Mutual said, we're not, this is not coverage. There's no property damage here and we're not covering, you're not entitled to any coverage under the policy. Okay. So then they, knowing that they have a critical customer, they say, okay, we got to, we got to deal with our, we got to, we just got to take care of this matter. We've, we've got to bend over backwards, help our customer take care of this. And, um, you know, they go ahead and do that. So they basically resolve the whole problem and now they come back to you and they say, hey, you didn't cover, you didn't provide coverage. What, what are they supposed to do? Thank you, your honor. Um, respectfully, I would say that we had provided them with information in connection with our assessment and investigation of the claim. And that would be the facts that were known to us with respect to the claim. There would not have been a declination as it relates to any suits. So in that sense, what we've done is provided them with information as to our investigation and inform them to the extent that a lawsuit has been filed, that they should tender that for our consideration. Um, I think that the courts are- Well, they act, they act according, I mean, they act, you know, they need to, to, to tend to their customer. Apparently it was a major customer of theirs. And your honor, I would say that- They're not going to say, hey, you know, we're not doing anything, sue us. Your honor, I would, I would, I would say that that was respectfully the very same situation that was at issue, uh, in, in the Foster Gardner case, uh, in the sense that there were concerns for, um, reputation and, or, uh, goodwill and, and frankly, uh, the court just found that the contract itself applies and it provides for a defensive suits, um, and these sort of policy considerations and, or things of, of that nature, um, would not give rise to a rewriting of the contract. And I would say for good reason, your honor, um, you know, in their, in their papers, they're, they're advocating for case law that pertains to conditions that can be set aside. The requirement of a suit is the fundamental requirement of this insurance policy. Uh, this, this requirement is not in the condition section. It's in the, in the very insuring agreement and the policy says that it provides for defensive suits. There is a doctrine called, there is a doctrine though called anticipatory breach. Why couldn't it apply here? Your honor, there are cases that have looked at, uh, anticipatory breach and repudiation in the insurance context. And first off, they say in order for that to, for instance, to apply, uh, and for instance, in this case, there would have to have been a suit in order for there to have been any sort of repudiation, you would have to have the coverage that was allegedly being withheld. Now here they cannot allege a suit on, on, on, uh, on, on remand or, or, or if it's given further leave. Um, I think, uh, in their argument, uh, I thought what I noticed was there was a failure to articulate any facts that could be, uh, amended. I would also note that the, the issue of repudiation was first introduced, uh, on appeal. I, we would, we would argue that it's not properly before the court, but there are cases that are very well looked at repudiation in the insurance context and found that it doesn't apply. If you read the first amendment complaint, what they're trying to do is enforce the contract. They're trying to enforce essentially, uh, a defense and indemnity obligation. Uh, what Glassworks is trying to do is they're attempting to obtain their defense law defense fees that they incurred in allegedly defending a claim as well as their, uh, their settlement payment in settling a claim. Whereas the policy is very clear that there's only a defense obligations with respect to suits and there's only a settlement and or indemnity obligation with respect to money damages that have been awarded in the suit. Um, and I would, I just, I do think that there are, you know, uh, Glassworks is entitled to the coverage that it, that it obtained and not more. The, the, uh, Foster Gardner case very well went into the idea is if, if a defense obligation with respect to claims was wanted, uh, premiums could be essentially charged for that, for that additional, um, obligation of the insurance company that did not happen here. Um, and, and frankly, the, to deprive the insurance company of the suit, which again is essentially the central basis of what they have promised to defend would be inequitable. And that's because all of the cases that look at third party insurance liability coverage and they're discussing essentially the requirements of a duty to defend, um, tell it, tell the insurance company in the first instance to look at the allegations of the suit in order to determine if the, the damages being sought therein are potentially covered. Now, uh, doing away with this, the suit requirement as a whole essentially prevents the insurance company from determining the allegations of the suit, which might ultimately potentially give rise to a defense obligation here. In this instance, it's inequitable in the sense that, uh, Liberty was never tendered a suit and, and was never afforded the opportunity to evaluate whether those allegations would trigger the coverage. Does the duty to defend in this context, uh, even ever arise? Absolutely. Uh, the duty to defend arises upon tender of the lawsuit. Well, that's what I meant. In this context, there was no tendering of a lawsuit. And it doesn't. No, it does not. There, so in this, so there's no duty to defend here whatsoever. There is no duty to defend because the policy is very clear, uh, uh, that the defense obligation is limited to suits. There's a clear delineation that the California Supreme Court recognized in the Foster Gardner case to give stability, to give predictability in the insurance context. Um, and it's, it's, it's a precedent that's been before, uh, the parties for more than 25 years. It's a precedent that the insured is charged with. There is an obligation. Why, why, why couldn't the insurance company then say, well, you know, might be covered? You know, to themselves, without saying anything to their, to their, to the insured, there might be coverage. But let's just sit back and wait and see if there's a lawsuit. And, and let me ask you a question, Mr. Olson, in, in addition to, uh, Judge Pius, which is, how is this not a circular argument? Um, you keep saying that there has to be a lawsuit filed so that you can investigate and determine whether there's coverage. But you've investigated and determined there's no coverage ahead of time and told, uh, Glassworks that they're not going to be covered. And yet somehow you want a lawsuit filed so you can determine coverage? I'm, I'm not understanding that argument. Thank you, Your Honor. Uh, what, what the, what the policy allows the insurance company to do in its own discretion is to investigate claims and settle claims to the extent that it believes expedient. Now, when you, when you are aware of facts of a claim, the insurance company can then conduct an investigation and it can inform its insurance. It's insured of the results of that investigation. And that's what happened here. Almost always. And in this specific instance, what they do is the insurance company will inform them of their investigation, but also they will say, listen, to the extent that a suit is ever filed, please tender that so we can evaluate the facts, the allegations that are being alleged. Did that happen here? Did that happen here? Did they tell Glassworks if a suit is filed, come back to us? Oh, most certainly. Where is that in the record? Uh, Your Honor, I, that, that this was a first amendment complaint that was alleged. So I, uh, I don't know that, uh, I don't know that the, uh, the Glassworks alleged those The facts before the court, uh, the district court was, um, that a suit was, uh, that there was a claim that there was no potential for a suit ever, um, ripening and such that it brought this within the two, uh, California Supreme Court decisions in both Foster Gardner and Powering. My understanding is that Liberty specifically informed Glassworks that it wouldn't defend against coverage, um, because it wasn't property damage, and then, uh, investigated a second time when Glassworks protested and reexamined it, I think it's in May of 2020, reaffirmed their finding, and it's in the record on, uh, ER 22. So, again, didn't, didn't you say, essentially, we're not going to defend? I mean, what's the use of a suit when you've said, we're not going to, if you're sued, we're not going to defend? Uh, there, there, there certainly was no, uh, nothing that indicated if you were sued, we, we would not defend. Essentially, there is an investigation of the facts of that claim, and under those facts, there's an articulation of the coverage position as it relates to those facts, but there's no indication that there would be no duty to defend a, a suit. In fact, that, there could not be a duty to defend until a suit was tendered. To be clear, the policy, the policy terms itself state that Liberty has a duty to, uh, a right and a duty to defend suits. It has a, uh, in its own discretion, it may investigate claims, um, but there is no duty to defend, there's, there's no duty to defend anything other than a, uh, a lawsuit. And that's for the very simple reason that there can be no defense of anything until there's a tender of the lawsuit, because until that time, uh, under the, under the, the Foster Gardner, uh, Gardner case, there simply is nothing to defend. Um, respectfully, I would, I would just say that a lot of the, the cases that have been um, uh, articulated by Glassworks, uh, in, in, in favor of an excuse, um, are, are all distinguishable. There has never been a case ever, uh, under California law that is, that is ever held that a liability insurer can be held, uh, in breach of contract under circumstances where there was no suit. Uh, and that's for a good reason. There's a very strong distinction between the conditions that are referenced in those other cases with respect to either notice or, um, or, uh, cooperation. And that's because the suit itself is, is, is typically the, the, the primary source of an insurance company's duty to defend. Until that has been tendered, uh, there simply is nothing to defend. Um, and when there is no, no suit, there is, um, there are no money, money damages, and that's the powering case. And essentially in the absence of the suit, there can be no, uh, duty to indemnify. Uh, and so respectfully, um, we would maintain that, uh, that, that lead to a further amendment should not be granted because there are no facts or circumstances, uh, under which a viable, um, breach of contract or in breach of the implied covenant, uh, a fair dealing, uh, claim can be asserted in, in such that, uh, the futility doctrine applies, uh, you know, as a matter of law. Um, uh, we would argue that, that no facts have been, um, shared with the court. Uh, uh, the, uh, Glassworks has, has implored the, the, the court to, to grant further lead, but in essence has not identified any facts that could be applied, uh, the amendment that would cause, uh, uh, a different result. Um, and so absent, uh, further questions from the court, I would, I would certainly, um, uh, be willing to address any other concerns, but, uh, we do find this to be a, a, a straightforward application of 25 years of California Supreme Court precedent on this very issue. Right. Thank you. And Mr. Reese, you have a little over three minutes for rebuttal. Uh, first to address Foster Gardner. That case was only an issue of, uh, whether a non-adjudicatory administrative hearing is a quote suit. They never addressed this excuse of condition proceeding that is at the heart of this case, so I don't really think it applies. Number two, uh, I think there are many cases cited in the briefs that talk about how the loss of, when you pay for protection from insurance and you lose that protection, you should be free to do what you want. And in the Pruan case, and also I think referred to in Iron Shore, courts have for some time accepted the principle that an insured who is abandoned by its liability insurer is free to make the best settlement possible with a third party claimant. And that's exactly what we have here. They abandoned us. They didn't have to. They could have said let's wait for the lawsuit, but they didn't. They said there's no possibility of coverage, this is not property damage. So where do you rely on for that? So if I understood, um, your opposing counsel's remarks, this was, uh, this was resolved, uh, the First Amendment complaint was dismissed. So there was no discovery. We're basically looking at the complaint, the First Amendment complaint and the policy which was incorporated. There was no discovery, the correspondence, et cetera, reports, none of that was in the record. So what's your basis for, is it in your complaint, do you allege that they said, uh, we will not prove, uh, that they didn't say if a suit is filed, um, you could come back. In other words, you're saying, they're telling you we're not going to cover this, it doesn't matter if a suit is filed. Did they say that? They said, and I think what we allege in the complaint is, they said there's no possibility of coverage. And they repeated that after we went back and said, we want you to reconsider this, you have all the information, here's the law and why you're wrong. They still said no possibility of coverage. Even if they said something in a letter that's not before the court, and frankly, I don't know what's in the letter that said, if you get sued, send us the lawsuit, that's not the same as saying we are abandoning you. They had clearly abandoned their insurer by their coverage choice. And, and that's why the, once they abandon the insurer, the cases are clear, the insurer, I mean, sorry, the insurer is free to do what's in their best interest. So is it, is your argument that once they decide to investigate a claim, potential claim, that the duty to defend is triggered? No. Once they investigate and then say, we're not going to cover, once they make that abandonment, then the insured is free to do what's in its best interest. And there are lots of cases that say that, and I've got half a minute left, so if there are any questions. I don't think that was quite responsive to Judge Beatty's question. Okay. I was adding additional facts to it. Her question was, once they investigate, do they have a duty to defend? And I'm saying, not necessarily. It depends on what the result of that investigation is. Once they investigate and determine there's no possibility of coverage, then that's what frees us from this excuse. But that puts the insurance company in the position that if they decide to do an investigation, if there's any possibility that they're going to deny coverage, they're going to have triggered coverage, right? Because in your scenario, if they investigate and conclude that there is coverage, then it's all good. Then they haven't breached. But once they decide there's no coverage, the investigation itself has triggered their duty. I don't think that's what I'm saying. What I'm saying, and maybe I'm not expressing it well, is if they investigate, they can say one of three things. Oh, this is covered, or potentially covered, and try and settle the case. That's why they have that option of investigating. Option number two, they say, we don't know if there's coverage or not, so let's wait for a lawsuit. Option number three is to say, we have investigated fully, and we see no possibility of coverage. And they have all of the facts before them, presented by the claimants, and we've alleged that, that SWAG made their arguments, we made the arguments, and they looked at the law, they looked at the facts, and they made a decision, no possibility of coverage. Once they make that determination, we will not protect you on this claim. Our argument is, and the law supports it, we're free to do what we want to protect ourselves, because we lost the protection, and it all comes down to coverage. If this goes back to the district court, the district court might… But the problem is, you didn't frame the case as clearly as one of coverage. It's not… You mean… I'm not sure I… You framed it as duty to defend, and buried within the duty to defend is the idea that there was a potential for coverage, but you didn't frame the case as a coverage case. Okay. I mean, at least the way I read the complaint… But if there is no coverage, I mean, how do we have any right to indemnity without having at least given them… Showing that they don't… That they did not need the duty to defend. Well, I guess it's all buried within the duty to defend. Correct. If they're not going to… If they've made the decision on coverage, and that's what the Clemmer and these other cases look at, they say, once the duty to defend becomes irrelevant, because they've made a coverage position, and that's Clemmer and Dreynan and Sampson, then we'll look at coverage. But you have to get past that duty to defend. And we're in a unique situation, because there's no case on point that says you have to have that suit. But there's no case to the contrary that says, even if they have abandoned you, you still have to have the lawsuit. There's no case that supports their position. All right. Well, thank you. Any further questions? Thank you, counsel. For your audience today, we'll take the case under submission. And we are in recess for today.
judges: PAEZ, BADE, Cardone